IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TORI ARTMAN, | |
| Plaintiff, | Court No. 1:20-cv-04501 |
| v. | Judge Alonso |
| DAVE GUALANDRI and the CITY OF OTTAWA, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants, DAVE GUALANDRI and CITY OF OTTAWA, by and through their attorneys, ALISON HARRINGTON and SCOTT DOLEZAL of BEST, VANDERLAAN & HARRINGTON, in further support of their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), submit as follows:

### SUMMARY OF THE PLEADING

The Plaintiff alleges that she was an employed as a deputy auditor in the of the LaSalle County Auditor's office. *Complaint at ¶ 9, attached as Exhibit A*. The Complaint alleges that LaSalle County State's Attorney Karen Donnelly requested Defendant Dave Gualandri of the Ottawa Police Department to investigate the Plaintiff and her co-worker. *Id.* at ¶ 2, 12. Specifically, Gualandri was asked to investigate the overtime pay claimed by the Plaintiff and her co-worker, Pamela Wright. *Id.* at ¶ 13. According to the Complaint, the Plaintiff would inform the auditor of the amount of overtime they worked, and the auditor would include the overtime hours in the Plaintiff's timesheets. *Id.* at ¶ 19.

Gualandri's investigation of whether the paid overtime was appropriate included interviewing the Plaintiff. *Id.* at ¶ 21. The Complaint alleges that Gualandri did not properly report that the Plaintiff denied that she inflated her overtime in order to receive compensation for time that she did not work. *Id.* at ¶ 22-24. The Complaint further maintains that instead of documenting the denial, Gualandri reported that the Plaintiff confessed to accepting payment for overtime she did not work. *Id.* at ¶ 24. The Complaint alleges that Gualandri testified before a grand jury and falsely testified that the Plaintiff confessed to accepting overtime pay that they did not earn. *Id.* at ¶ 27. The Complaint alleges that as a result of this testimony, the Plaintiff was indicted on felony charges of theft, official misconduct, and conspiracy, and that these these charges were not supported by probable cause. *Id.* at ¶ 28-29. After the indictments were returned, the Complaint maintains that the Plaintiff turned herself in and was released on bond. *Id.* at ¶ 30. The criminal prosecution against the Plaintiff proceeded to trial, and on August 14, 2019, a jury returned a verdict of not guilty. *Id.* at ¶ 33-34. The Complaint alleges that following the criminal trial, the Plaintiff was offered her position as a deputy auditor back if she paid back the money she earned in overtime. *Id.* at ¶ 35. The Complaint further alleges that "[d]espite Plaintiff having worked most of the overtime hours for which she was paid, Plaintiff agreed to pay back all overtime to get her position back." *Id.* at ¶ 35.

As a result of these allegations, the Plaintiff alleges that her Fourth Amendment rights were violated because she was indicted and arrested without probable cause (Count I) and because she was placed on bond and her liberty interests were restricted without probable cause (Count II). The Plaintiff's Complaint also alleges state law claims for malicious prosecution, willful and wanton conduct, and indemnity. For the reasons that follow, the Plaintiff's Complaint must be dismissed, with prejudice.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to state a plausible claim for relief, that is, facts "that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (citations omitted). A complaint must "give the defendant fair notice of what the claim is and the grounds on which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citation and alterations omitted). The court is not bound to accept a plaintiff's legal conclusions or conclusory allegations. *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012).

**ARGUMENT**

**I. THE COMPLAINT MUST BE DISMISSED BECAUSE THE ALLEGATIONS OF THE COMPLAINT ESTABLISH THERE WAS PROBABLE CAUSE TO BRING CRIMINAL CHARGES AGAINST THE PLAINTIFF**

The Plaintiff's claims against Gualandri all rely on the absence of probable cause to support the criminal charges brought against her. In her Fourth Amendment claim for false arrest alleged in Count I, the existence of probable cause bars the Plaintiff's claim. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause."). Similarly, there is no Fourth Amendment claim for an alleged unlawful pre-trial detention if probable cause exists for the detention. *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("there is a constitutional right not to be held in custody without probable cause"). Under Illinois law, the Plaintiff must prove the absence of probable cause in order to succeed on a claim for malicious prosecution. *Swick v. Liautaud,* 169 Ill.2d 504, 662 N.E.2d 1238, 1242 (1996) (identifying the absences of probable cause as a requisite element of a malicious prosecution claim). Finally, the Plaintiff's claims for

willful and wanton conduct rely on the Plaintiff's allegation that the Plaintiff was arrested, charged and faced criminal charges without probable cause because Gualandri fabricated evidence against her. *Exh. A at p. 8-9.* Specifically, the Complaint alleges that "Gualandri falsely reported that the Plaintiff had confessed to accepting payment for time she did not work." *Exh. A at ¶ 24.* The allegations of the Plaintiff's complaint and the documents that this Count can take judicial notice of both establish that probable cause existed to support the Plaintiff's arrest, and the Plaintiff's Complaint must be dismissed with prejudice.

    A. <u>The Factual Allegations of the Complaint Establish Probable Cause Existed to Charge the Plaintiff With Official Misconduct, Theft and/or Conspiracy</u>

The Plaintiff's federal constitutional claims against Gualandri rest on her allegation that Gualandri provided false testimony during the grand jury proceedings and that she was indicted and subjected to prosecution as a result of those statements. The Complaint alleges that Gualandri "testified before a grand jury and, upon information and belief, falsely stated that both deputy auditors had confessed to accepting money that they did not earn." *Exh. A at ¶ 27.* The Complaint alleges that "[d]ue to Defendant Gualandri's false testimony, the Plaintiff was indicated on felony charges of theft, official misconduct and conspiracy." *Id.* at ¶ 28.

The indictments which formed the basis of the criminal charges were based solely on the acceptance of overtime pay that was not earned by the Plaintiff. *Exh. A at ¶ 27-29; see also Indictments attached as Exhibit B.*[1] In her Complaint, the Plaintiff admits that she received payment for overtime that she did not earn. Specifically, she pleads "[d]espite having worked

---

[1] This Honorable Court may take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994). Further, Plaintiff refers the criminal charges in the Complaint, and they are central to her claims, and therefore, this Court may consider this document. *Venture Assocs. Corp. v .Zenith Data Sys. Corp.* 987 F.2d 429, 431 (7th Cir. 1993). Further, Plaintiff refers to her conditions of bond, which are central to her 4th Amendment claim as is the dismissal order related to the criminal charges of her case. As such, the public court documents addressing these issues may be considered by the Court. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.* 987 F.2d 429, 431 (7th Cir. 1993).

most of the overtime hours for which she was paid, Plaintiff agreed to pay back all overtime to get her position back." *Id*. at ¶ 35. The corollary to this allegation, and a reasonable inference to be derived from this allegation, is that there were at least some overtime hours for which the Plaintiff was paid that she did not earn. The allegations of the Plaintiff's complaint admit her guilt to accepting payment for overtime for hours that she did not work.

When a plaintiff pleads guilty to a criminal charge, she admits that there was probable cause for that charge. *Gray v. Burke*, 466 F. Supp. 2d 991, 997 (N.D. Ill. 2006), *citing Shkrobut v. Chicago*, 2005 WL 2787277, *2 (N.D. Ill. 2005) ("A criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted"); *Appley v. West*, 832 F.2d 1021, 1026 (7th Cir. 1987) ("In this Circuit, a criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted") (citations omitted). Just as a guilty plea admits that there was probable cause for the charge, so too the Plaintiff's admissions in her complaint establish that probable cause existed. *Jackson v. Marion Cty.,* 66 F.3d 151, 153–54 (7th Cir. 1995) (allegations in a complaint are "binding admissions" that "can of course admit the admitter to the exit from the federal courthouse"). The Complaint alleges that the Plaintiff "most of the overtime hours for which she was paid." *Exh. A at ¶ 35*. Her binding admission establishes that she did not work at least some of the overtime hours for which received payment. The Plaintiff's allegation that she was guilty of accepting unearned overtime, but not to the extent alleged in the criminal proceedings, is an admission that probable cause existed for charges of theft, official misconduct and conspiracy, which were exclusively based on her receipt of unearned overtime. The Plaintiff's admission that probable cause existed defeats the Fourth Amendment claims

5

alleged in Counts I and II, the malicious prosecution claim alleged in Count IIII and the willful and wanton claim alleged in Count IV, and these claims must be dismissed.

Moreover, the existence of probable cause entitles Gualandri to qualified immunity, "an additional layer of protection against civil liability." *Hughes v. Meyer*, 880 F.2d at 867, 970 (7th Cir. 1989). Police officers performing discretionary functions "enjoy qualified immunity from suit unless it would have been clear to a reasonable police officer that, given the situation she confronted, her conduct violated a constitutional right." *Pourghoraishi v. Flying J*, 449 F.3d 751, 761 (7th Cir. 2006). Qualified immunity shields officers who correctly determine that probable cause exists, and also those who "reasonably but mistakenly conclude that it does." *Spiegel v. Cortese,* 196 F.3d 717, 723 (7th Cir. 1999). If there is no merit to plaintiff's constitutional claim, then courts are not required to inquire as to whether the purported right was clearly established at the time of the alleged violation. *Pourghoraishi*, 449 F.3d at 761. Plaintiff has a clearly established right to not be arrested without probable cause, but by admitting in the allegations of her complaint that she accepted overtime pay that she did not rightfully earn, she admitted to the existence of probable cause. *Appley*, 832 F.2d at 1026. Thus, qualified immunity bars the Fourth Amendment claims alleged in the Complaint and Counts I and II must be dismissed.

B. The Plaintiff's Criminal Trial Testimony Establishes That the Plaintiff Engaged in Official Misconduct, Theft, and/or Conspiracy

In deciding a motion to dismiss, the Court may "take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts." *Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1073 (7th Cir. 2013); *see also Philips Med. Sys. Int'l, B.V. v. Bruetman*, 982 F.2d 211, 215 (7th Cir. 1992) (there is a "longstanding rule" that courts will "make exceptions" to the rule against judicially noticing new evidence "where the new evidence is of a 'proceeding[ ] in other courts, both within and outside of the federal judicial system,' " so long as "the

6

proceedings have a direct relation to matters at issue"). During the course of her criminal trial, the Plaintiff offered testimony which conclusively established that she accepted payment for overtime that she did not earn. Further, during the trial, the Plaintiff admitted that she told Gualandri that she accepted overtime that she did not earn. The Plaintiff's admissions, which are part of the public record, are properly considered by this Court, and establish that she is not entitled to relief on her claims against Gualandri, and the Complaint must be dismissed.

During the course of her criminal trial, the Plaintiff testified on her own behalf. *See Criminal Trial Testimony of August 13, 2019, attached as Exhibit C*. During the direct and cross-examination, the Plaintiff offered testimony that is in direct contravention to the allegation of her complaint that she did not tell Gualandri that she was aware that she received unearned overtime. As an initial matter, the Plaintiff testified unequivocally that she did not dispute that she received overtime that she did not earn. *Id. at 25*. ("Q: you're not disputing the fact that you were paid overtime that you didn't work for, correct? A: That's correct"). Further, the Plaintiff testified that she advised Gualandri that she knew that she was paid overtime that she did not earn. *Id. at 26*. ("Q: And your best estimate to Captain Gualandri and Captain Kessinger was that, of the timesheets he showed you, about half of that overtime was not actually earned by you, correct? A. That was my best guesstimate at the time. I did not go time sheet by time sheet at that time'). During her conversation with Gualandri, the Plaintiff testified that she offered to pay back the unearned overtime. *Id. at 31-32*. ("Q. When you talked to Captain Gualandri, did you offer to pay the money back? A. Yes, I did."). The Plaintiff further testified that she was aware that she had been paid this overtime and that she did not report that she received the same. *Id. at 7*. ("Q. In December of 2017, did you understand . . . that there was a potential of you having extra overtime on your timesheet that you did not work? A. No. Q: When did that come

7

to your attention? A. Around June of 2018. . . . Q: What, if any, action did you take as a result of that information? A. I didn't take any action").

The Plaintiff's testimony in which she admitted that she told Gualandri that she did not earn approximately 50% of the overtime she was paid establishes that there was probable cause to believe that the Plaintiff committed theft and official misconduct. The Plaintiff was charged with theft of government property in violation of 720 ILCS 5/16-(a)(1) based on her receipt of overtime pay she did not receive. *Exh. B at 2.* To prove a claim of theft, the state must prove that the criminal defendant was not the owner of the property in question; that the defendant knowingly obtained control over the property; that the defendant obtained control over such circumstances as would reasonably induce her to believe that the property was stolen; and that the defendant intended to deprive the owner permanently of the use or benefit of the property. *Ill. Pattern Criminal Jury Inst. 13.24*. A charge of official misconduct arising from the receipt of government funds requires the additional element that the defendant was a public official. *People v. Kotero*, 2012 IL. App. (1st) 100951 at ¶ 21, 978 N.E.2d 315 (2012). Based on the admissions contained in the Plaintiff's criminal trial testimony, there can be no doubt that probable cause existed to bring criminal charges against the Plaintiff for theft. "[Probable] cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949). Prior to the commencement of criminal charges, the Plaintiff admitted to Gualandri that she was in receipt of overtime she had not earned. The information provided to Gualandri further established that the Plaintiff made no attempt to return the unearned money that she was aware that she had been paid, indicating that she intended to

is not used; instead:

8

permanently deny the County of its property. Because the Plaintiff's criminal trial testimony clearly establishes that probable cause existed to charge the Plaintiff with theft and official misconduct, the Plaintiff is not entitled to the relief sought in her Complaint and it must be dismissed.

## II. THE PLAINTIFF'S FOURTH AMENDMENT CLAIMS ARISING FROM HER ALLEGED INDICTMENT AND ARREST WITHOUT PROBABLE CAUSE CONTAINED IN COUNT I ARE NOT ACTIONABLE

In Count I of the Complaint, the Plaintiff alleges that she was arrested and subject to indictment without probable cause. *Exh. A at ¶ 39-41*. The Fourth Amendment claim is based on the alleged arrest and issuance of an indictment without probable cause. *Id.* at *¶* 41. The Complaint does not allege that Gualandri arrested her. Instead, the Complaint alleges that the Plaintiff was turned herself into authorities and that she was released on bond. *Id. at ¶ 30*.

### A. The Plaintiff's Fourth Amendment Claim Arising From The Alleged Arrest of The Plaintiff Must Be Dismissed Because There Is No Allegation Gualandri Was Personally Involved In Detaining the Plaintiff

The Complaint alleges that "the Plaintiff was caused to be arrested. . ." based on the indictment. *Exh. A at ¶ 39*. The Complaint further alleges that "upon being informed of the indictment, Plaintiff turned herself in and subsequently released on bond [*sic*]." *Id. at ¶* 30. Based on the allegations of the Complaint, the Plaintiff was not subjected to an arrest by Gualandri. Instead, she was subjected to booking following the issuance of an indictment. *Id*. However, there is no allegation that Gualandri was personally involved in the booking process. "A damages suit under § 1983 requires that a defendant be personally involved in the alleged constitutional deprivation." *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014), *citing Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation'") (*quoting Palmer v. Marion*

9

*Cty.*, 327 F.3d 588, 594 (7th Cir. 2003)). Because there is no allegation that Gualandri was personally involved in an arrest, detention, booking, or any other physical restraint of the Plaintiff, the Plaintiff's Fourth Amendment claim must be dismissed.

    B. <u>The Plaintiff's Fourth Amendment Claim Arising From An Alleged Prosecution Without Probable Cause Is Not Cognizable</u>

The Plaintiff's Fourth Amendment claim alleged in Count I is based, in part, on her alleged indictment and prosecution without probable cause. *Exh. A at ¶ 39-42*. Gualandri is entitled to dismissal of this aspect of the Fourth Amendment claim because the Plaintiff is not entitled to relief on this claim. "[T]here is no such thing as a constitutional right not to be prosecuted without probable cause." *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013); *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018). There is only a constitutional right not to be held in custody without probable cause. *Manuel*, 903 F.3d at 670. In *Manuel*, the plaintiff sued police officers after he was arrested for possession of a controlled substance. *Id.* at 668. After being detained for 47 days, the charges were dismissed after the prosecutor determined that the pills the plaintiff was carrying were legal. *Id.* The Court determined that the Plaintiff could not pursue a claim against the officers for pursuing the prosecution without probable cause because the Fourth Amendment did not permit such a claim. *Id.* at 670.

Likewise, in this case, the Plaintiff is not entitled to relief on her Fourth Amendment claim which arises out of the alleged prosecution without probable cause. The Fourth Amendment does not protect against prosecutions without probable cause. *Id.* As such, the Plaintiff's claim that her Fourth Amendment rights were violated by virtue of the alleged criminal prosecution without probable cause is without merit, and Count I must be dismissed.

    C. <u>To The Extent Plaintiff Is Attempting to Allege A Fourth Amendment Malicious Prosecution Claim In Count I, This Claim Must Also Be Dismissed</u>

In Count I, Plaintiff's Complaint maintains that she is seeking recovery for a "false arrest." *Exh. A at Count I.* However, where, as here, a complaint alleges that police officers "fabricated evidence during the investigation, which in turn was used to indict and arrest the plaintiffs without probable cause," the complaint does not allege a false arrest claim. *Bianchi v. McQueen*, 818 F.3d 309, 321 (7th Cir. 2016) ("The problem with this [false arrest] claim is that it is not actually one for false arrest. . . ."). A "false arrest is detention *without* legal process." *Id.* (emphasis in original, internal quotations omitted). Where a plaintiff alleges she was arrested "*after* and *as a consequence of* formal legal process," the claim is one for malicious prosecution. *Id.* Applying this reasoning, in *Bianchi*, the court found that the plaintiff failed to state a claim for false arrest where the complaint alleged that fabricated evidence was presented to the grand jury to obtain an indictment and the indictment led to the issuance of arrest warrants. *Id.* at 322. Instead, the court found that the allegation that an arrest occurred pursuant to form legal process stated a claim for malicious prosecution rather than false arrest. *Id.*

As in *Bianchi*, the Plaintiff alleges that she was indicted based on allegedly false information presented during a formal legal process and that she was subsequently subjected to prosecution. *Exh. A at ¶ 28-34.* The Complaint fails to state a false arrest claim because it is alleged that the Plaintiff was arrested after and as a consequence of formal legal process, which included the presentation of evidence before a grand jury. The Complaint fails to state a false arrest claim because there is no allegation that the alleged arrest occurred prior to the initiation of legal process. Under these circumstances, the Plaintiff has alleged only a malicious prosecution claim and has not alleged any claim for relief which implicates the Fourth Amendment, and her false arrest claim alleged in Count I must be dismissed.

### III. COUNT II MUST BE DISMISSED BECAUSE THE COMPLAINT DOES NOT ALLEGE A VIOLATION OF THE FOURTH AMENDMENT ARISING FROM THE IMPOSITION OF BOND CONDITIONS

In Count II, the Plaintiff alleges that an indictment was issued as a result of Gualandri's allegedly false grand jury testimony. *Exh. A at ¶ 44*. The complaint alleges that the Plaintiff was taken into custody and placed on bond as a result of this alleged testimony. *Id.* at ¶ 45. The Complaint alleges that the Plaintiff was subjected to a Fourth Amendment violation because the conditions of her bond restricted her liberty interests. *Id.* at ¶ 46.

#### A. The Plaintiff's Claim Related to Bond Conditions Do Not Implicate the Fourth Amendment

The Complaint does not identify the conditions of the Plaintiff's bond. However, the bail bond, of which this Court may take judicial notice, requires that the Plaintiff pay $1,000 bond, that she not leave the state, and that she appear in court as ordered. *See Bail Bond attached as Exhibit D*. These bond conditions are consistent with Illinois statutes. 725 ILCS 5/110-10. The Seventh Circuit has rejected the notion that these bond conditions implicate the Fourth Amendment. Specifically, the Seventh Circuit has determined that construing these bond conditions as a Fourth Amendment seizure would fundamentally alter the understanding and structure of the pretrial system. *Bielanski v. Cty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("To hold otherwise would transform every traffic ticket and jury summons into a potential § 1983 claim."); *see also Mitchell*, 912 F.3d at 1017 ("We have misgivings about construing a simple obligation to appear in court—a uniform condition of any pretrial release—as a 'seizure' for Fourth Amendment purposes."); *Smith v. City of Chicago*, No. 18 C 4918, 2019 WL 4242503, at *2 (N.D. Ill. Sept. 6, 2019) (rejecting a Fourth Amendment claim related to these bail conditions); *Allen v. Utreras*, No. 17 C 2144, 2018 WL 8261309, at *1 (N.D. Ill. Nov. 9, 2018)

(citations omitted) ("the Seventh Circuit was not concerned with the lesser freedom restrictions imposed on a person released on his own recognizance, but specifically with detention itself.")

Routine conditions of bail do not rise to the level of a Fourth Amendment violation. Instead, conditions of pretrial release must "impose significant restrictions on liberty" before they implicate the Fourth Amendment. *Mitchell*, 912 F.3d at 1016 (emphasis added). Monthly court hearings at which a criminal suspect is required to appear and asking for permission to leave the state fall far short of that benchmark. *Spring-Weber v. City of Chicago*, 2018 WL 4616357, at *12 (N.D. Ill. Sept. 26, 2018) ("Nor is there a seizure every time the government compels a person to be in a particular place. For instance, service of a summons to appear in court—even though it is backed by a court's power to hold the recipient in contempt and imprison her if she does not comply—does not amount to a seizure within the meaning of the Fourth Amendment."). "When minor and routine restrictions limit a person's liberty, seizure concerns are simply not implicated. Instead, the primary focus is on physical detention or restrictions that are similarly severe." *Allen*, 2018 WL 8261309, at *1 (N.D. Ill. Nov. 9, 2018).

Similarly, the Plaintiff's allegation that her liberty interests were implicated by the conditions of bond imposed by virtue of the criminal proceedings do not rise to the level of a Fourth Amendment violation. The Plaintiff was booked and released on bond, and the conditions of her bond clearly demonstrate that the conditions to which she was subjected do not implicate the Fourth Amendment. *Exh. D*. Because the Plaintiff's conditions of bond did not rise to the level of a physical detention or any other restriction of her liberty to a similar degree, the Plaintiff is not entitled to relief on her Fourth Amendment claim arising out of her bond conditions, and Count II must be dismissed.

> B. <u>If The Plaintiff's Claim Arising From Her Bond Conditions Implicate the Fourth Amendment, The Defendants Are Entitled to Qualified Immunity on Her Claim</u>

Even if this claim were cognizable as a Fourth Amendment violation, which is denied, Gualandri is entitled to qualified immunity because the Plaintiff immediately posted bonded and was released. In *Bianchi*, the Plaintiff alleged that she was subjected to prosecution based on falsified evidence. *Bianchi v. McQueen*, 818 F.3d 309, 315 (7th Cir. 2016). The Plaintiff alleged that falsified evidence was presented to the grand jury in order to obtain indictments against her. *Id.* The Plaintiff alleged that she was arrested and released on bond. *Id.* The Seventh Circuit determined that the investigators who allegedly provided the false testimony were entitled to qualified immunity. *Id.* at 323. In support of this, the Court determined that "[b]ecause the plaintiffs were immediately released on bond and were neither seized nor detained, they suffered no Fourth Amendment injury" and found that qualified immunity barred the claim against the officers. *Id.*

Similarly, Gualandri is entitled to qualified immunity on the Plaintiff's claim that she was subjected to a Fourth Amendment violation as a result of the charges brought against her. The Plaintiff alleges that she was arrested as a result of Gualandri's actions. *Exh. A at ¶ 44*. However, the records of the LaSalle County Sheriff indicate that intake occurred at 16:00 and that she was released on the same day at 16:15. *Sheriff's Booking Record attached as Exhibit E*. These records indicate that the Plaintiff was subjected to an "arrest" of approximately 15 minutes that amounted to being booked. *Id.* As the Seventh Circuit determined in *Bianchi*, the Plaintiff's arrest and immediate release on bond demonstrate that the Plaintiff was not subjected to a Fourth Amendment violation, and Gualandri is entitled to qualified immunity on the Plaintiff's Fourth Amendment claim.

### IV. THE PLAINTIFF'S MALICIOUS PROSECUTION CLAIM MUST BE DISMISSED BECAUSE THE PLAINTIFF IS NOT ENTITLED TO RELIEF ON HER CLAIM

In Count III, the Plaintiff alleges a malicious prosecution claim based on a prosecution without probable cause. *Exh. A ¶ 53*. The Complaint further alleges that the criminal prosecution was terminated in a manner indicative of innocence by virtue of the voluntary dismissal of the charges by the State's Attorney. *Exh. A at ¶ 35, 57*. In order to establish a claim of malicious prosecution under Illinois law, the plaintiff must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud,* 169 Ill.2d 504, 662 N.E.2d 1238, 1242 (1996) (citations omitted). "The absence of any one of these elements bars a plaintiff from pursuing the claim." *Id.* The Plaintiff is not entitled to relief on her claims against Gualandri, and Count III must be dismissed.

A. <u>The Plaintiff Cannot Establish That There Was No Probable Cause To Bring The Charges Against Her</u>

For the reasons stated in part I, supra, the Plaintiff's admissions contained in the Complaint and the Plaintiff's criminal trial testimony, the Plaintiff cannot establish that an absence of probable cause to bring the criminal charges against her. As a result, she is not entitled to relief on her malicious prosecution claim, and the Complaint must be dismissed.

B. <u>The Plaintiff's Fails To Allege that She Sustained Special Damages</u>

To succeed on her malicious prosecution claim, the Plaintiff must establish that she sustained a special injury as a result of the alleged prosecution. The element of special injury has been defined as that "injury not necessarily resulting in any and all suits prosecuted to recover for like causes of action." *Stopka v. Lesser*, 82 Ill.App.3d 323, 325, 402 N.E.2d 781, 783 (1st Dist. 1980) (citations omitted). Thus, the special injury must be an injury this is "beyond the

anxiety, loss of time, attorney fees, and necessity for defending one's reputation, which are an unfortunate incident of many (if not most) lawsuits." *Id.* (citations omitted); *Howard v. Firmand,* 378 Ill.App.3d 147, 152, 880 N.E.2d 1139, 1144 (1st Dist. 2007) (citations omitted). *Levin v. King,* 271 Ill.App.3d 728, 730, 648 N.E.2d 1108 (1995). An example of special injury has been defined as "an arrest or seizure of property or some constructive taking or interference with the person or property." *Levin v. King,* 271 Ill.App.3d 728, 730-31, 648 N.E.2d 1108 (1st Dist. 1995). The purpose of a special injury component in a malicious prosecution complaint is to "maintain a proper balance between the societal interest in preventing harassing suits and in permitting the honest assertion of rights in our court rooms." *Cult Awareness Network v. Church of Scientology International,* 177 Ill.2d 267, 284, 685 N.E.2d 1347 (1997).

The Plaintiff's Complaint fails to plead she sustained any special damages as a result of the criminal prosecution as required under Illinois law. The Complaint pleads that the Plaintiff was required to retain an attorney, pay bond, and that she suffered unspecified "damages of a personal and pecuniary nature." *Exh. A at ¶ 59.* These allegations are insufficient to establish a malicious prosecution claim. The Complaint pleads that the Plaintiff faces criminal charges. To the extent that the Plaintiff sustained financial damages by virtue of posting bond or paying an attorney, these are the types of damages that are part of the ordinary expense, time, and annoyance of defending a criminal prosecution. As a matter of law, these alleged damages fail to establish that the Plaintiff sustained special damages as required to sustain a malicious prosecution claim, and Count III must be dismissed.

**V. THE WILLFUL AND WANTON CLAIM ALLEGED IN COUNT IV MUST BE DISMISSED BECAUSE GUALANDRI IS ENTITLED TO ABSOLUTE IMMUNITY ON ANY CLAIMS ARISING FROM HIS GRAND JURY TESTIMONY AND BECAUSE THIS CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS**

In Count IV, the Complaint alleges a claim against Gualandri and the City of Ottawa for willful and wanton conduct under Illinoi law. *Exh. A at p. 8-9*. The Complaint alleges that Gualandri had a duty to refrain from willful and wanton conduct. *Id.* at ¶ 62. The Plaintiff's claim must be dismissed because Illinois law does not recognize an independent tort of willful and wanton conduct. The Illinois Supreme Court has indicated that there is independent tort under Illinois law for willful and wanton conduct. *Ziarko v. Soo Line R. Co.,* 161 Ill.2d 267, 641 N.E.2d 402, 406 (1994) ("There is no separate and independent tort of 'willful and wanton' misconduct"). However, Illinois recognizes a claim for willful and wanton conduct as a form of aggravated negligence. To state such a claim, "a plaintiff must plead ... the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury," as well the additional element that the defendant had "either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.,* 973 N.E.2d 880, 887, 2012 IL 112479, 362 Ill. Dec. 484 (2012) (citations omitted).

Plaintiff's willful and wanton claim is premised upon Gualandri's allegedly false grand jury testimony that led to the criminal charge against the Plaintiff. *Exh. A at ¶ 63*. Under Illinois law, a witness before a grand jury is entitled to absolute immunity from a lawsuit that is based on his testimony. *See Barnes v. Martin*, 2014 IL App (2d) 140095U, ¶ 57 (2014) (*citing Rehberg v. Paulk*, 132 S.Ct. 1497, 1506 (2012), which applies this rule to suits under 42 U.S.C. § 1983). Because Gualandri is entitled to absolute immunity on the Plaintiff's willful and wanton claim arising from his alleged grand jury testimony, Count IV must be dismissed.

Further, the claim against Gualandri related to his investigation of the Plaintiff and preparation of a police report must be dismissed because these claims do not allege negligent

17

conduct. A willful and wanton claim is a form of aggravated negligence under Illinois law. *Jane Doe-3,* 973 N.E.2d at 887. The Plaintiff's claim is subject to Illinois' one year statute of limitations against municipal entities and their employees. 745 ILCS 10/8-101. The Complaint alleges that Gualandri fabricated evidence against the Plaintiff by conducting an investigation and completing a police report that falsely reported Wright's statements to him. *Exh. A at ¶ 22-28, 62*. Based on the allegations of the Complaint all of these actions took place prior to the time that the Plaintiff was indicted. Although the date of the indictment is not identified in the Complaint, the Plaintiff posted bond on September 27, 2018. *Exh. D*. Therefore, the Plaintiff's willful and wanton claim arising from this alleged conduct had to be filed on or before September 27, 2019, at the latest, to be timely. However, the Plaintiff's claim was not filed until July 31, 2020, and her willful and wanton claim arising from Gualandri's pre-indictment investigation of the Plaintiff is untimely, and it must be dismissed. The willful and wanton claim arising from Gualandri's grand jury testimony must also be dismissed on this basis. The Plaintiff's allegation that Gualandri "continued" the criminal investigation of the Plaintiff is insufficient to timely state a willful and wanton claim against him because there is no allegation in the Complaint which would establish that Gualandri took any action in furtherance of the criminal prosecution after he testified before the grand jury. Because the willful and wanton claim is untimely, it must be dismissed.

WHEREFORE, the Defendants, DAVID GUALANDRI and the CITY OF OTTAWA, respectfully request that Plaintiff's Complaint be dismissed, with prejudice and that this Court award any other relief deemed reasonable.

Respectfully submitted,

**DAVID GUALANDRI and THE CITY OF OTTAWA**

By: */s/ Scott B. Dolezal*
        One of theur attorneys

Alison M. Harrington
Scott B. Dolezal
**Best, Vanderlaan & Harrington**
25 E. Washington St., Suite 800
Chicago, IL  60602
(312) 819-1100
(312) 819-8062 (Fax)

## CERTIFICATE OF SERVICE

I, the undersigned, state that I caused copies of the foregoing to be served, with enclosures referred to thereon, if any, by **Electronic filing** to the attorney(s) of record at the address(es) and/or facsimile number(s) of record from 25 E. Washington St., Suite 800, Chicago, IL prior to 5:00 p.m. on September 29, 2020.

*/s/ Scott B. Dolezal*

Re: Wright v. City of Ottawa, et al.
    Court No.: 1:20-cv-04504
    BVH File: IML.20273

# ATTORNEY SERVICE LIST

Shawn Barnett
Hale & Monico, LLC
53 W. Jackson St., #337
Chicago, IL  60604
(312) 870-6905
Attorney for Plaintiff
Pamela Wright

,