THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TORI ARTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 4501 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| DAVE GUALANDRI and THE CITY | ) |
| OF OTTAWA, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

After being acquitted by a jury of official misconduct and theft charges, Plaintiff filed suit under federal law and Illinois state law alleging that Defendant Gualandri, a City of Ottawa police officer, fabricated evidence that led to her arrest and subsequent criminal prosecution. Defendants move for dismissal of Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted in part and denied in part.

**I.    BACKGROUND**

The following facts are taken from Plaintiff's complaint. Plaintiff Tori Artman was a deputy auditor at the LaSalle County Auditor's Office. Plaintiff alleges that defendant Dave Gualandri, a City of Ottawa police officer, fabricated confessions to crimes of official misconduct and theft on the part of Plaintiff and Pamela Wright, a co-worker at the LaSalle County Auditor's Office. The basis of the misconduct was that Plaintiff intentionally inflated her overtime hour amounts to receive financial compensation for work she didn't perform. Plaintiff was charged with several crimes, turned herself in, and later was released on bond on September 25, 2018. During the pendency of her criminal case, Plaintiff was terminated from her position with the LaSalle County Auditor's Office. Plaintiff's case went to trial, and on August 14, 2019

she was found not guilty by a jury. After this, Plaintiff was offered her position back as a deputy auditor if she repaid all the money she received from overtime pay. Plaintiff agreed and was reinstated as a deputy auditor for the LaSalle County Auditor's Office.

Plaintiff then filed this lawsuit against Gualandri and the City of Ottawa under 42 U.S.C. § 1983 and state law. Her claims include a Fourth Amendment claim for false arrest (Count I); a Fourth Amendment claim for unlawful pretrial detention (Count II); a state-law claim for malicious prosecution (Count III); a state-law claim for willful and wanton conduct (Count IV); and a claim against Ottawa for indemnification of any damages awarded against Gualandri (Count V).[1]

## II.  LEGAL STANDARD

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic Corp.*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must

---

[1] Wright has filed a virtually identical lawsuit, also in the Northern District of Illinois, against Gualandri and the City of Ottawa currently pending before the Hon. Matthew F. Kennelly. *See Wright v. Gualandri et. al.*, Case No. 20-cv-4504.

include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic Corp.*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the non-movant. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Ashcroft*, 556 U.S. at 680-81 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement").

## III. DISCUSSION

### A. Probable Cause

Defendants move to dismiss Counts I, II, and III[2] on the basis that the factual allegations in Plaintiff's complaint establish probable cause for her arrest and subsequent prosecution. Because Defendants' probable cause argument overlaps all these separate counts, the Court addresses probable cause within this section. The existence of probable cause would defeat Plaintiff's claims for false arrest, unlawful detention, and malicious prosecution. *See Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016) ("To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest"); *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1071 (N.D. Ill. 2018) (holding that a claim for unlawful detention under the Fourth Amendment requires a seizure of the plaintiff pursuant to legal

---

[2] Defendants also move to dismiss Count IV based on probable cause, but as discussed in section III.F, this count is dismissed on other grounds.

process unsupported by probable cause); *Vaughn v. Chapman*, 662 Fed. App'x 464, 467 (7th Cir. 2016) (holding that probable cause is a complete defense to malicious prosecution).

Under federal law "[a]n officer has probable cause to arrest if at the time of the arrest, the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Neita*, 830 F.3d at 497. (internal quotation marks omitted). Illinois law has a similar definition, defining probable cause as "'a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged.'" *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 112 (quoting *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 642 (2002)).

Defendants argue that Plaintiff's factual allegations essentially plead her out of court because they establish the existence of probable cause for Defendants' alleged conduct. Although allegations within a complaint constitute binding admissions on a party, in this case the allegations to not compel an inference that probable cause existed. The difficulty in adopting Defendants' position is that it requires reasonable inferences that Defendants are not entitled to at this stage. The non-movant, in this case the Plaintiff, is entitled to all reasonable inferences, not the movant. *Boucher*, 880 F.3d at 365. Under this guiding principle, the Court finds that Plaintiff adequately alleges a lack of probable cause for her arrest and subsequent detention. Defendants argue that Plaintiff's allegations support a finding of probable cause because Plaintiff admits that she received money for overtime work she didn't perform. Therefore, Defendants contend that these allegations compel an inference that Plaintiff misappropriated government funds. But even if Plaintiff acknowledges that she received unearned overtime pay, all charges levied against

Plaintiff still required an element of knowledge or intent. *See* Dkt. 1 at ¶28; 720 Ill. Comp. Stat. Ann. 5/8-2(a); 720 Ill. Comp. Stat. Ann. 5/19-1(a)(1)[3]; 720 Ill. Comp. Stat. Ann. 5/33-3(a)(2). Plaintiff alleges that during her interview with Defendant Gualandri, she denied intentionally or knowingly inflating her overtime hours to receive payment for work that was not performed, and that Gualandri misreported this conversation. Therefore, even if Plaintiff received funds for unearned overtime pay, that, by itself, does not imply that she did so with the requisite degree of intent. At this stage, Plaintiff is entitled to this reasonable inference, which could support a lack of probable cause for her detention.

### B. Qualified Immunity

Defendants also move to dismiss Counts I and II and the basis of qualified immunity, "which protects government officials from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity, the Court considers whether Plaintiff has shown a violation of a constitutional right and whether the constitutional right "was clearly established at the time of the alleged violation." *Purvis*, 614 F.3d at 720.

It has been clear since at least *Franks v. Delaware*, 438 U.S. 154 (1978), that falsifying the factual basis for a judicial probable-cause determination violates a clearly established

---

[3] Plaintiff's response brief contends that she was indicted of one count of theft under 720 Ill. Comp. Stat. Ann. 5/19-1(a)(1). *See* Dkt. 21 at pg.5. That section of the criminal code, however, refers to the crime of burglary. This appears to be a typographical error, and it is more likely that Plaintiff was indicated on one count of theft under 720 Ill. Comp. Stat. Ann. 5/16-1(a)(1) based on Plaintiff's assertion that she was indicted for theft and because the indictment attached to Defendants' memorandum references this section of the criminal code. In any event, both crimes require that the crime be committed "knowingly," and therefore the difference is immaterial for purposes of this ruling.

5

constitutional right. 438 U.S. at 171-172. What's more, Defendants' reliance on *Bianchi v. McQueen*, 818 F.3d 309 (7th Cir. 2016) is misplaced. In *Bianchi*, the Seventh Circuit held that the defendants, specially-appointed prosecutors, were entitled to qualified immunity in a malicious prosecution case because the plaintiff's unlawful detention claim was predicated on an arrest that occurred after and as a consequence of formal legal process (i.e., a warrant). First, *Bianchi* was decided prior to the Supreme Court's decision in *Manuel v. City of Joliet* (hereafter "*Manuel I*") and is clearly abrogated to the extent that it held that an unlawful detention claim cannot be maintained after and as a consequence of formal legal process. *See Manuel I*, _ U.S. _, 137 S. Ct. 911, 920 (2017) ("Our holding—that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process—does not exhaust the disputed legal issues in this case"). Second, *Bianchi* specifically noted that there was no detention—the plaintiffs "were never held in custody; rather, they were immediately released on bond and not detained." 818 F.3d at 315. *Bianchi* is simply not applicable to this case. Unlike *Bianchi*, Plaintiff alleges that she was arrested and detained until she posted bond. Therefore, accepting Plaintiff's allegations that Gualandri fabricated his conversation with Plaintiff to reflect that she confessed to certain crimes, the Court will not dismiss Counts I and II based on qualified immunity at this time.

### C. Count II: Fourth Amendment Unlawful Pretrial Detention

Aside from probable cause and qualified immunity, Defendants also argue other grounds for dismissal of Count II.[4] Defendants contend that Plaintiff fails to allege a cognizable unlawful detention claim under the Fourth Amendment because her bond conditions were not sufficiently onerous to constitute a "seizure" within the meaning of the Fourth Amendment. In rebuttal,

---

[4] Because the Court concludes that Count I is duplicative with Count II, as discussed below, the Court addresses Count II first.

Plaintiff argues that the Court should not dismiss this count without the opportunity for discovery as to the bond conditions that Plaintiff was subject too. Plaintiff also argues that notwithstanding the bond conditions, she has stated a claim for unlawful detention based on her allegations of a pretrial arrest and detention prior to posting bond.

The Supreme Court held in *Manuel I* that claims of unlawful pretrial detention, including claims of pretrial detention based on fabricated evidence, sound in the Fourth Amendment. 137 S. Ct. at 920; *see also Williams*, 315 F. Supp. 3d at 1071. "To bring a claim for violation of the Fourth Amendment per *Manuel* [*I*], courts have set forth the following elements: 'the defendant[s] (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" *Williams*, 315 F. Supp. 3d at 1070 (citations omitted). The Seventh Circuit has further explained that "the constitutional injury arising from a wrongful pretrial detention rests on the fundamental Fourth Amendment principle that a pretrial detention is a 'seizure'—both before formal legal process and after—and is justified only on probable cause." *Lewis v. City of Chicago*, 914 F.3d 472, 476-77 (7th Cir. 2019). Consequently, a Fourth Amendment claim for wrongful pretrial detention is concerned with "the detention rather than the existence of criminal charges." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) (hereafter "*Manuel II*").

In *Terry v. Ohio*, the Supreme Court crafted a general definition for a seizure: "when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." 392 U.S. 1, 19 n.16 (1968). And although a traditional arrest is commonly understood as a seizure, the scope of a seizure is even broader than that. *See Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) ("An arrest, of course, qualifies as a 'seizure' of a 'person'...."); *Terry*,

392 U.S. at 16 ("It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime....").

For example, in *Mitchell v. City of Elgin*, the Seventh Circuit held that the plaintiff had stated a claim under the Fourth Amendment based on allegations that she was unlawfully detained without probable cause. 912 F.3d 1012, 1015-1017 (2019). Like the present case, the plaintiff in *Mitchell* was arrested and released on bond on the same day. *Id.* at 1014. Though the Court had reservations about whether subsequent routine bond conditions could constitute a seizure within the meaning of the Fourth Amendment, there appeared to be no hesitation that the initial arrest unquestionably constituted a detention. *Id.* at 1015-1016 ("Mitchell was not detained beyond her initial arrest; she bonded out the same day and suffered no further pretrial detention"). With respect to bond conditions, the Seventh Circuit suggested that "pretrial release might be construed as a 'seizure' for Fourth Amendment purposes if the conditions of that release impose significant restrictions on liberty.'" *Id.* at 1016. The corollary to that statement is that ordinary or routine bond conditions are insufficient to amount to a constitutional violation. *Id.*; *see also Smith v. City of Chicago*, 2019 U.S. Dist. LEXIS 151957; 2019 WL 4242503, at *2-3 (N.D. Ill. 2019).

Here, based on *Manuel I* and *Mitchell*, Plaintiff's allegations suffice to allege a seizure that, at a minimum, stems from her initial arrest, which is commonly understood to be a seizure under the Fourth Amendment. *See Ashcroft*, 563 U.S. at 735. Plaintiff's complaint appears to allege an unlawful detention claim based solely on the bond conditions imposed upon her, [Dkt. 1 at ¶¶42-49], but Plaintiff's response brief indicates that her claim is based both on the bond conditions and the arrest and detention prior to the bond conditions. The bond documents

attached to Defendants' memorandum[5] appear to detail these conditions—i.e., appear in court as ordered; not to violate any state law; deposit $1,000 as security— and appear to fall into the category of routine conditions that are insufficient to substantiate a Fourth Amendment claim. At this stage though, the record is insufficient to determine if these were the only conditions imposed on Plaintiff when she was released on bond. The determination of whether Plaintiff's bond conditions constitute a "seizure" is better suited for summary judgment. Moreover, given that Plaintiff has adequately alleged that she was unlawfully detained without probable cause prior to being bonded, dismissal of this count would be inappropriate even if the bond conditions were insufficient to rise to the level of a constitutional violation. Therefore, the motion to dismiss is denied as to Count II.

### D. Count I: Fourth Amendment False Arrest

Like Count II, Defendants also argue additional grounds for dismissal of Count I. First, Defendants contend that Plaintiff's claim is insufficient because Gualandri was not personally involved in arresting Plaintiff. To be sure, to recover under § 1983 a plaintiff must establish that a defendant was personally involved in the alleged constitutional deprivation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). But personal involvement is satisfied if the conduct causing the constitutional deprivation occurs at the defendant's direction or with his knowledge or consent. *Id*. "In short, some causal connection or affirmative link between the

---

[5] Defendants ask the Court to take judicial notice of various documents attached to Defendants' memorandum. The Court can take judicial notice of public records, including public records filed in other lawsuits, without converting a motion to dismiss into one for summary judgment. *Henson v. CSC Credit Svcs.*, 29 F.3d 280, 284 (7th Cir. 1994). Additionally, a document attached to a motion to dismiss is considered part of the pleadings if it is referred to in the complaint and central to the plaintiff's claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993). Here, Plaintiff makes specific reference to her bond conditions, and premises her unlawful detention claim, in part, on the bond conditions placed upon her. Therefore, the Court will take judicial notice of Exhibit D attached to Defendants' memorandum, which is Plaintiff's bail bond document, but declines to take judicial notice of any other documents.

action complained about and the official sued is necessary for § 1983 recovery." *Id.* (citing *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

Here, Plaintiff adequately pleads Gualandri's personal involvement. She alleges that Gualandri told prosecutors she confessed to knowingly receiving unearned overtime funds, and she disputes that she provided this confession. Furthermore, according to Plaintiff, prosecutors proceeded to charge her based on this false confession. Based on these allegations, there is sufficient causal connection between Gualandri's alleged actions and Plaintiff's Fourth Amendment claim.

Second, Defendants argue that there is no cognizable claim under the Fourth Amendment for prosecution without probable cause. Defendants are correct on this point, as the Seventh Circuit has specifically stated that "'[t]here is no such thing as a constitutional right not to be prosecuted without probable cause.'" *Manuel II*, 903 F.3d at 670 (citing *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013)). The Fourth Amendment does, however, provide a constitutional right not to be detained without probable cause, which appears to be the crux of Plaintiff's claim. *Id.* Plaintiff contends that she was arrested and detained, albeit briefly, without probable cause and not just that she was subjected to criminal proceedings without probable cause. Accordingly, the Court construes Plaintiff's claim as contesting her pretrial detention, not that criminal proceedings against her were instituted.

The only problem with Plaintiff's position is that it essentially overlaps Count I with Count II. As clarified by the Supreme Court in *Manuel I*, all § 1983 claims for wrongful detention fall within the Fourth Amendment. 137 S. Ct. at 917-920; *Young v. City of Chicago*, 425 F. Supp. 3d 1026, 1034 (N.D. Ill. 2019). Here, Plaintiff clarifies in her response brief that her constitutional claim under Count II is premised on both the bond conditions as well as her

10

detention prior to being bonded. But that means that Counts I and II are premised on the same alleged conduct and implicate the same constitutional right—the right to be free from unlawful detentions absent probable cause. Nothing is gained in this case by keeping two separate counts that implicate the same constitutional right. As such, Count I is dismissed as redundant with Count II. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (affirming dismissal of redundant claims that "gain[] nothing by adding additional constitutional labels"); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that constitutional claims are addressed under the most applicable constitutional provision).

### E. Count III: Malicious Prosecution.

In Count III, Plaintiff asserts a claim for malicious prosecution. To establish a claim of malicious prosecution under Illinois law, a plaintiff must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick*, 169 Ill. 2d at 512. As discussed above, Plaintiff has adequately pled a lack of probable cause for her detention. The Court has already rejected Defendants' argument that Plaintiff's allegations establish probable cause; therefore, the Court will not belabor this point further.

Defendants' also argue that Plaintiff has not adequately pled special damages. But under Illinois law, no showing of special injury is required when the underlying prosecution is for a criminal charge. *See Cult Awareness Network v. Church of Scientology, Inc.*, 177 Ill. 2d 267 (1997) (requiring special damages when the underlying suit is civil); *Burge v. Harvey Police Officers*, No. 97 C 4569, 1997 WL 610045, at *3 (N.D. Ill. Sept. 25, 1997) ("Because the malicious prosecution in the instant case is based on a criminal prosecution and was

11

accompanied by Burge's arrest, we find that the 'special injury' requirement does not apply").
Because Plaintiff's underlying prosecution was for criminal charges, Plaintiff is not required to
plead special damages. Accordingly, the motion to dismiss is denied as to Count III.

### F. Count IV: Willful and Wanton Conduct.

Defendants advance three arguments for dismissal of Count IV, Plaintiff's "Willful and
Wanton" count: willful and wanton is not an independent tort, absolute immunity, and the statute
of limitations. Because the Court agrees that willful and wanton is not an independent tort, the
Court need not consider Defendants' alternative arguments.

Illinois does not recognize an independent tort for "willful and wanton" conduct. *See
Ziarko v. Soo Line R. Co.*, 161 Ill. 2d 267, 274 (1994) ("There is no separate and independent tort
of "willful and wanton" misconduct"); *Jane Doe-3*, 2012 IL 112479, ¶19 ("In order to recover
damages based on willful and wanton conduct, a plaintiff must plead and prove the basic
elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the
defendant breached that duty, and that the breach was a proximate cause of the plaintiff's
injury…[i]n addition, a plaintiff must allege either a deliberate intention to harm or a conscious
disregard for the plaintiff's welfare"). Allegations regarding willful and wanton misconduct are
regarded as a form of aggravated negligence—with willful and wanton behavior falling
somewhere in the spectrum between standard negligence and intentional action. *See Jane Doe-3*,
2012 IL 112479, ¶19. First though, there must be a recognized tort claim. *Id.*; *see also* 745 Ill.
Comp. Stat. Ann. 10/2-202; *Harris v. Wainscott*, No. 18 C 2789, 2019 U.S. Dist. LEXIS 75458,
2019 WL 1995270, at *3 (N.D. Ill. May 5, 2019) (false imprisonment claim). Plaintiff argues
that she does not need to allege an underlying tort claim, but that is clearly incorrect under
applicable Illinois law. Therefore, Count IV is dismissed without prejudice.

### G. Count V: Indemnity

Count V (which is incorrectly labeled as Count IV in the complaint) consists of a claim of indemnity against the City of Ottawa for Defendant Gualandri's alleged conduct. Section 9-102 of the Local Governmental and Governmental Employees Tort Immunity Act provides for payment of judgments or settlements by a local public entity on behalf of any employee acting within the scope of their employment for the local public entity. 745 Ill. Comp. Stat. Ann. 10/9-102. The City of Ottawa and Defendant Gualandri fall within the purview of this act. *See* 745 Ill. Comp. Stat. Ann. 10/1-206 (defining local public entity); 745 Ill. Comp. Stat. Ann. 10/1-202 (defining employee).

Defendants argue that this claim should be dismissed so long as the Court dismisses the other counts against Gualandri. Because the Court denies the motion to dismiss with respect to Counts II and III, the Court denies the motion to dismiss as to Plaintiff's indemnification count.

### IV. CONCLUSION

Defendants' joint motion to dismiss [12] is granted in part and denied in part. The Court dismisses without prejudice Counts I and IV. The Court otherwise denies the motion to dismiss. Plaintiff is given leave to amend if she wishes. Any amended complaint shall be filed by June 11, 2021. Defendants responsive pleading is due by July 9, 2012. A status hearing is set for July 16, 2021 at 9:30 a.m. The parties are directed to file a joint status report in accordance with the Court's standing order by July 13, 2021.

**SO ORDERED.**                                              **ENTERED:  June 3, 2021**

_____
**JORGE L. ALONSO**
**United States District Judge**